1997 OK 95

**SELF INSURERS' MANAGEMENT GROUP, Plaintiff/Appellant,**

v.

**The YWCA OF OKLAHOMA CITY, Century Martial Arts Supply, Inc., E & H Transfer, Inc., City Glass Co., Flip's Wine Bar & Trattoria, Inc., Mangum Brick Company Ronnie's Signs, Inc., Dalmarc Enterprises Incorporated, Barbara J. Wilson, Oklahoma Steel & Wire, C & H Power Line, Chris Hunt Water Hauling and John Vance Motors, Defendants/Appellees.**

No. 86718.

Supreme Court of Oklahoma.

July 8, 1997.

Rehearing Denied March 9, 1998.

Larry Derryberry, David B. Dykeman, Derryberry, Quigley, Parrish & Solomon Oklahoma City, for Plaintiff/Appellant.

Bradley D. Brickell, Mahaffey & Gore, Oklahoma City, for Defendants/Appellees.

WATT, Justice.

This is an appeal from the judgment of the District Court of Oklahoma County, Oklahoma, Honorable Niles Jackson, Judge. The trial court granted summary judgment for the thirteen Defendants/Appellees listed in the style of this appeal, and against Plaintiff/Appellant, Self Insurors' Management Group. On October 21, 1996, we withdrew this case from assignment to the Court of Civil Appeals because of its important public policy implications. On January 31, 1997 we ordered that jurisdiction be retained in this appeal and that it be made a companion case with *Oklahoma Employers Safety Group, S.I.A. v. Colbert Nursing Homes, Inc.*, 1997 OK 94, 954 P.2d 120 (Okla.1997), decided this day, because it involves the same important public policy issues.

FACTS AND PROCEDURAL HISTORY

In 1981 the Legislature passed 85 O.S. 1981 § 149.1, which directed that "The Workers' Compensation Court shall adopt rules permitting two or more employers ... to pool together liabilities under this act for the purpose of qualifying as a group self insurer...." Section 149.1 allowed small employers to pool their risks of workers' compensation liabilities and, thereby, spread their risk of loss among a far larger group of employers than an individual employer could do. By joining a group self-insurer, employers could avoid paying the profit built into a commercial insurance company's workers' compensation premiums. Those employers joining in the group however, jointly and severally undertook the risk of loss that insurance companies would otherwise have assumed.

In 1982 the Workers' Compensation Court approved Self Insurors' Management Group, then known as the Oklahoma City Drillers Association, to act as a group self-insurance association in accordance with § 149.1. The Association, with the approval of the Workers' Compensation Court, changed its name to Self Insurors' Management Group in 1984.

During the mid 1980s several hundred small employers, including the Defendants/Appellees, joined the Association. In 1989 the Association ceased to provide new coverages for its members because of heavy underwriting losses, but was authorized by the Administrator of workers' compensation to continue business in order to wind up its affairs.

This long and tortured litigation began on November 3, 1989 when the Association filed this suit against hundreds of its members, including Defendants/Appellees. It sued for breach of its Application for Membership, Indemnity Agreement, and Power of Attorney that each of its members had executed upon joining the organization. Such agreements were required by Rule 3 of the Workers' Compensation Court's Rules, which governed group self-insurers. The Agreement stated that

> Each and every Member jointly and severally agrees to assume, pay and discharge any liability under the [Workers' Compensation] ACT of any and all members of the ASSOCIATION and each Member agrees to pay any assessments as may be required by the BOARD [of Directors of the Association].

In its original petition, the Association sought to require the payment of unpaid assessments that its members had failed to pay in violation of the terms of the Agreement. The Association filed an amended pe-

tition on March 31, 1994 claiming that each named defendant was jointly and severally liable for $2,500,000, which was the aggregate amount owed to the Association by its members to cover the Association's losses. Earlier, on December 3, 1991, the District Court of Oklahoma County, while the case was assigned to Judge Virgil C. Black, denied the "Defendants Motion for Summary Judgment" on the ground that the Agreements did not violate the securities laws. The record does not identify which defendants the 1991 order referred to, as those defendants' motion for summary judgment was not made a part of the record on appeal.

On July 31, 1995 the Defendants/Appellees filed a motion for summary judgment in which they claimed that (1) the Agreements were unregistered securities and, therefore, illegal, unenforceable, and void; and (2) Plaintiff materially breached the Agreements. The trial court granted summary judgment for Defendants/Appellees and as part of its order allowed for an immediate appeal. This part of the order was made necessary because other defendants were not parties to Defendants/Appellees motion for summary judgment.

In its order, entitled "Final Journal Entry of Judgment Limited as to Certain Parties and Defendants," the trial court confirmed its order granting Defendants/Appellees summary judgment and overruled Plaintiff's motion for new trial. The trial court based its ruling in favor of Defendants/Appellees on the following conclusions: (1) the Agreements were unregistered securities and could not be enforced against Defendants/Appellees, and (2) Plaintiff materially breached the Agreements because there was "no recognizable purpose for associating" among Association's members, in violation of Workers' Compensation Court Rules. The Rules relied on by the trial court, Rule 3, Sections 3(b) and (d), provide:

> (b) "Group self-insurance association" or "association" means an association organized by two or more employers having a common interest which have entered into agreements under the Oklahoma Workers' Compensation Act.
>
> . . .

> (d) "Common interest" means employers engaged in the same or similar types of business or who otherwise have a recognizable common purpose for associating. . . .

## ISSUES

(1) Were the Agreements unregistered securities and therefore unenforceable against Defendants/Appellees?

(2) Did the trial court correctly rule that the Agreements violated Workers' Compensation Court rules because there was no "common interest" between the Association's members?

We answer no to each question.

## DISCUSSION

### I.

█ In this part of our opinion we will consider whether the Association's Agreements with its members violated the Oklahoma Securities Act. For the reasons set forth in the balance of this part of the opinion we believe that the Agreements did not violate the Oklahoma Securities Act.

In 1996 the Legislature amended 85 O.S.Supp.1996 § 149.1 by adding subsection C, which states:

> A group self-insurer created pursuant to this section either prior to or after the effective date of this act shall not be subject to the provisions of the Oklahoma Securities Act.

This amendment to § 149.1 makes abundantly clear the Legislature's intention that the agreements of all members of all associations created under the terms of § 149.1, including the Agreements at issue here, are not covered by the Oklahoma Securities Act. We note that the trial court ruled that the Securities Act was violated without the benefit of the Legislature's clear mandate to the contrary in its 1996 amendment to § 149.1.

Defendants/Appellees rely on the rule that the validity of a judgment must be measured by the law in force when it was rendered, citing *Evans v. Evans*, 852 P.2d 145 (Okla. 1993). The *Evans* rule does not apply here for two reasons. First, the judgment at is-

sue in *Evans* was a final judgment. Here, however, the Defendants/Appellees' judgment was not final, as the Association filed a timely appeal. Second, the judgment at issue in *Evans* was a property division decree in a divorce case, and, under 43 O.S.1991 § 134.A, property division provisions in divorce decrees are "irrevocable and not subject to subsequent modification." *Evans,* 852 P.2d at 148. The issue in *Evans* was whether subsequent legislation making military retirement benefits reachable in divorce actions changed the rule established by 43 O.S. § 134.A. We held that the property division decree remained effective under 43 O.S. § 134.A. By contrast to *Evans,* no express Oklahoma law made group self–insurance agreements subject to the Oklahoma Securities Act before the 1996 amendment to § 149.1. In fact, it seems clear to us that the Legislature amended § 149.1 to clarify what it perceived the law to have been since the passage of § 149.1 in 1981.

Defendants/Appellees also contend that they have a vested right in the trial court's determination that the Agreements were void as being contrary to the Oklahoma Securities Law, so that § 149.1.C should not be applied retroactively, despite its clear language. We disagree. Defendants/Appellees rely on *Texas County Irr. and Water Resources Ass'n v. Oklahoma Water Resources Bd.,* 803 P.2d 1119 (Okla.1990). That case, does not support Defendants/Appellees position. There we held that where a prior enactment is ambiguous there is a presumption that subsequent legislation amending the act "was designed to clarify its text." This is the situation before us here. Defendants/Appellees do not suggest what it is that gave them a vested interest in the trial court's decision, and we see nothing that could have done so.

The Legislature has established a clear public policy that compensation to employees covered by the Workers Compensation Act be secured. Title 85 O.S.Supp.1994 § 61 requires that compensation shall be secured either through insurance or through a self-insurance arrangement establishing the employer's ability to pay. In 1993 the Legisla-

ture added Subsection B to § 61, which provides:

> An employer upon application to become a member of a group self-insurance association shall file with the Administrator of the Workers' Compensation Court a notice ... acknowledging that the employer by entering into the group self-insurance association, accepts joint and several liability. Such notice shall be submitted to the Workers' Compensation Court with the application for membership.

Under Section 6 of Rule 3, every applicant for membership in a group self-insurance association must file with the Workers' Compensation Court an application form, which the Workers' Compensation Court must approve before an applicant may become a member of a group self-insurance association. In its application, each applicant for membership must "include evidence of the execution of the indemnity agreement and power of attorney required by Section 12 [of Rule 3]." Thus, Defendants/Appellees are bound to joint and several liability under the Workers' Compensation Court Rules, as well as under the Agreement. The clear purpose of this requirement is to insure that there will be funds to pay workers' compensation awards to injured workers.

Defendants/Appellees claim that they were entitled to assert Oklahoma Securities Act defenses before the 1996 amendment to § 149.1. But this is not necessarily so. Section 149.1 was silent with respect to whether the Securities Act would apply to agreements made under its terms. Thus, there was no statutory or case law indication prior to the trial court's ruling to support Defendants/Appellees claim that Defendants/Appellees have a vested interest in having their Agreements deemed securities.

In passing § 149.1 and allowing employers to join group self-insurance associations, the Legislature meant to provide security for workers' compensation payments to employees of such associations. To carry out this public policy, the Legislature decided that members of group self-insurance associations would not be covered by the Oklahoma Securities Act. This was a policy decision with retroactive effect on the existing Self Insu-

rors' Management Group regimes now in force, to which this Court will defer.

Because of our conclusion that the Securities Act does not apply here, we deny the Application for Leave to File Amicus Curie Brief filed by several former members of group self-insurer associations. The proposed amicus brief deals exclusively with whether agreements made under the pre 1996 version of § 149.1 are securities under the Oklahoma Securities Act. The Legislature, by its 1996 amendment to § 149.1 established as a matter of Oklahoma public policy that such agreements are not covered by the Securities Act, thus whether such agreements would have been securities had the Securities Act applied to them is irrelevant to the issues before us.

Because § 149.1 was not amended until after the trial court ruled in this matter, the matter must be assessed in the first instance by the trial court. *American Insurance Association v. State Industrial Commission,* 745 P.2d 737, 740 (Okla.1987). We therefore reverse and remand this matter to the trial court with instructions to proceed in a manner consistent with this opinion, and with our opinion in the companion case, *Oklahoma Employers Safety Group, S.I.A. v. Colbert Nursing Homes, Inc.,* 1997 OK 94, 954 P.2d 120 (Okla.1997).

### II.

■ The Association appeals from the trial court's ruling that there was no disputed issue of material fact as to whether there was a "recognizable common purpose for [the Association's members] associating." We hold that the trial court erred.

Rule 3, Section 3(b), of the Workers' Compensation Court's Rules, the Rule governing group self-insurer associations, requires that the members of a self-insurance association have a "common interest." Section 3(d) says that " 'Common interest' means employers engaged in the same or similar types of business *or who have a recognizable common purpose for associating.*" [Emphasis added.] Defendants/Appellees would have us hold that the Association's members had no "common interest" in associating themselves with the Association because the members' businesses were dissimilar. We find this contention unconvincing because it ignores the emphasized portion of Section 3(d) set out above. The Workers' Compensation Court expressly authorized group self-insurers to have members who had a "recognizable common purpose for associating." We hold that the broad standard of Section 3(d) encompasses those members who joined because they were willing to take the risk of being self insured in return for the possibility that they would pay less for group self-insurance than for private insurance.

Section 4 of Rule 3 provides that the Workers' Compensation Court will review the applications of all group self-insurance associations "on an annual basis to determine continued compliance with the law and these regulations." Presumably, therefore, the Workers' Compensation Court was aware that the Association had members whose businesses were dissimilar, but the record does not reflect that the Workers' Compensation Court objected to it. As noted earlier, Rule 12 requires that every member of a group self-insurance association execute an indemnity agreement "subject to the approval of the Court," and 85 O.S.Supp.1994 § 61.B requires applicants for membership in an association to file with the Workers' Compensation Court a notice acknowledging its acceptance of such liability. We conclude, therefore, that the trial court erred in holding that Workers' Compensation Court's Rules prohibited dissimilar businesses from joining a group self-insurance association. We hold that the association of Defendants/Appellees here was appropriate under the statutes and Workers' Compensation Court Rules.

In addition to the two issues before us today, the trial court considered and denied Defendants/Appellees' motion for summary judgment on the issues of whether joint liability could be imposed against Defendants/Appellees and whether the Association breached the Agreements by failing to hold annual elections of its supervisory board. While those issues are not expressly before us today, we observe for the benefit of the trial court and the parties on remand of this

matter that both the statutes and the Workers' Compensation Court Rules relating to group self-insurance associations require members of such associations to accept joint and several liability as a condition of membership. 85 O.S.Supp.1994 § 61.C; Rule 3, Section 12, Rules of the Administrator of the Workers' Compensation Court.

Defendants/Appellees' contention that breach of the failure to hold elections of the Association's Board is equally unpersuasive. Section 11 of Rule 3, Rules of the Administrator, explicitly requires the Association to make up any deficits it may sustain by, among other means, "assessment of the membership."

Finally, the relevance of the Association's failure to hold elections as an excuse for Defendants/Appellees' failure to comply with the clear requirements of the Rules escapes us. There is nothing in the record to indicate that any of the Defendants/Appellees expressed any concern on this score prior to being sued by the Association.

## CONCLUSION

Because § 149.1 was not amended until after the trial court ruled in this matter, the matter must be assessed in the first instance by the trial court. We therefore direct that on remand the trial court afford Defendants/Appellees the opportunity to litigate the issue in the trial court and thereafter rule in a manner consistent with this opinion and our opinion in the companion case. The trial court erred in holding that the Association breached the Agreements by allowing members having dissimilar businesses to join the Association. We therefore reverse and remand this matter to the trial court with instructions to proceed in a manner consistent with this opinion, and with our opinion in the companion case.

JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS

KAUGER, C.J., SUMMERS, V.C.J., and HODGES, OPALA and WATT, JJ., concur.

SIMMS, J., concurs in result only.

LAVENDER, HARGRAVE and ALMA WILSON, JJ., concur in part, dissent in part.

SIMMS, Justice, concurring in result only:

¶ 1 In my opinion, summary judgment was inappropriately granted in favor of the defendants as substantial controversy remained concerning material factual issues and defendants were not entitled to judgment as a matter of law.

¶ 2 It is for that reason only that I concur in the result of the majority opinion reversing the summary judgment and remanding the matter to the trial court for further proceedings.